STATE v. PETERSON.

No. 3830.  Decided December 11, 1922.  (211 Pac. 694.)

1.  EMBEZZLEMENT—PROOF AGENT RECEIVED SUM BELONGING TO HIM-SELF AND PROSECUTORS AND CONVERTED THEIR SHARE SUSTAINS CHARGE OF EMBEZZLEMENT.  A charge of embezzling $630 belonging to prosecuting witnesses is sustained by proof that defendant received as agent the sum of $1,200, part of which belonged to himself and part of which, $630, belonged to prosecuting witnesses, and that he converted to his own use the share of the prosecuting witnesses.

2.  EMBEZZLEMENT—CONVERSATION OF DEFENDANT WITH WITNESS HELD ADMISSIBLE AS ATTEMPT TO INFLUENCE TESTIMONY.  In a prosecution for embezzlement, testimony that before a criminal charge was made against accused he asked witness if she saw him pay the money over to prosecuting witness, and she said

she did not, whereupon accused remarked it was "just as easy to say yes as no," was admissible as an effort by accused to induce the witness to testify falsely.

3. CRIMINAL LAW—ATTEMPT TO INFLUENCE TESTIMONY IN CIVIL SUIT IS ADMISSIBLE WHERE FACT WAS JUST AS MATERIAL IN CRIMINAL PROSECUTION. An attempt by accused before any charge was preferred against him to induce a witness to testify falsely to a fact to sustain the defense of accused in a pending civil suit is admissible against him in a subsequent prosecution for embezzlement, where the fact to which the testimony related was just as material in the criminal prosecution as in the civil suit.

4. EMBEZZLEMENT—AGREEMENT TO MAKE PARTICULAR APPLICATION OF MONEY COLLECTED HELD ADMISSIBLE TO SHOW RECEIPT BY DEFENDANT AND OWNERSHIP BY PROSECUTING WITNESS. In a prosecution for embezzlement of the share of prosecutors in a sum of money collected by defendant as their agent, evidence that, when he collected the money, defendant agreed he would see to it that the share of prosecuting witnesses was applied to a particular mortgage, was admissible as tending to show receipt by him of the money and its ownership by prosecuting witnesses and was not incompetent merely because it tended to show a breach of faith with the debtors.

Appeal from the District Court, Third District, Salt Lake County; *M. L. Ritchie*, Judge.

N. C. Peterson was convicted of embezzlement, and he appeals.

AFFIRMED.

*H. L. Pratt and Wilson McCarthy*, both of Salt Lake City, for appellant.

*Harvey H. Cluff*, Atty. Gen., and *L. A. Miner*, Asst. Atty. Gen., for the State.

WEBER, J.

Having been convicted of embezzlement, defendant ap-

Appeal from Third District

peals.   The information charges that the defendant on or about the 10th day of August, 1918, while the agent of Nick Mageras and Georgica Mageras received $630 lawful money of the United States, the property of said Nick Mageras and Georgica Mageras, and that said defendant, in violation of his trust, willfully, unlawfully, fraudulently, and feloniously appropriated, embezzled, and converted the said sum to a use not in the lawful execution of his trust, to wit, to his own use.

The first proposition discussed by appellant's counsel is whether there was proof of embezzlement of money or merely embezzlement of checks.   The evidence fairly warranted the following instruction given to the jury by the court:

"The defendant is charged by the information with the embezzlement of money, to wit, the sum of $630, lawful money of the United States.   You are instructed that in contemplation of law checks are not money.   But if you find from the evidence that the defendant was authorized by Nick Mageras and Georgica Mageras to receive from the mortgagees, G. G. Hoxie and wife, the proceeds of a note and mortgage in the sum of $1,200, and that he undertook to and did accept checks and money orders made payable to himself which he thereafter converted into lawful money for payment to Nick Mageras and Georgica Mageras, or to one Ensign, in payment of the Forgett note and mortgage, in the execution of his trust, as their agent, and that he thereafter, on or about the 10th day of August, 1918, or at any time thereafter and before the filing of the complaint herein, willfully, unlawfully, fraudulently, and feloniously converted said money to his own use, as charged in the information, then you may find the defendant guilty of the crime of embezzlement."

By its verdict the jury found that it was money that was embezzled, and not checks.   A careful review of the evidence, which it is unnecessary to detail here, convinces us that the conclusion reached by the jury was justified by the evidence.

It is argued that defendant could not be convicted of embezzlement of the $630 mentioned in the information because the money he received was $1,200, of which he and either the Hoxies or Magerases were joint owners.   The defendant collected from one Hoxie and his wife $1,200, for which amount Mageras and his wife had signed, executed, and

delivered a promissory note and mortgage. Of the $1,200, appellant was entitled to $478, which he had advanced to Mageras, and an additional amount which Mageras owed the appellant, leaving a balance of $630. But this $630 belonged to Mageras. Under any theory of the case it was his money, and appellant had no right to retain it or appropriate it to his own use without the consent of Mageras. According to the evidence of appellant, the $630 belonged to Mageras; the defense being that this money had been paid Mageras by the appellant.

Complaint is made that a Mrs. Violet England was permitted to testify that defendant came to her home a year or so after the loan transaction when there was a case pending between Mageras and the Hoxies over the transaction involved in this case; that defendant showed her the receipt for $630, in evidence here, and asked her if her signature was on the receipt and if she saw the money paid over to Mageras. This was previous to any criminal charge being made against appellant. Mrs. England said she did not see the money paid over, and defendant then said, "Well, it is just as easy to say yes as no, isn't it?" Appellant then told her the amount he claimed he had paid to Mageras, and that it was part currency and part checks. Appellant argues that this transaction showed nothing with regard to his guilt, but tended to prejudice the jury against him. It is true, as his counsel says, that this transaction had nothing to do with the case at bar. The testimony, however, showed an effort on the part of the appellant to induce the witness England to testify falsely. Testimony of that character is always admissible against the party who has attempted to thus influence one whom he has sought to secure as a witness on his behalf. 16 C. J. § 1075.

While the testimony related to a civil suit to which defendant was not a party, the transaction to which the witness testified was the same as that which was testified to by Peterson in this case, and the testimony sought to be obtained by Peterson from the witness was in relation to the alleged payment of the same $630 by Peterson to Mageras,

which was the defense urged in this criminal-prosecu-
tion. It is generally held that evidence of attempts      3
to influence witnesses is not admissible unless done in
connection with the case on trial. The reason for this rule
does not apply to the appellant's attempt to influence the
witness in this case, because the testimony which appellant
sought to obtain was as essential and important to him and
would have been as useful to him in case of his prosecution
as it would have been in the case in connection with which he
interviewed the witness. When appellant suggested that it
was as easy to say yes as no to the question whether the
witness saw him pay Mageras, he was apparently attempting
to prepare a defense for himself in the event of a criminal
prosecution as well as to corroborate his own testimony in
the civil suit in which the record shows him to have been a
witness.

In our opinion the ruling of the trial court admitting the
evidence above referred to was not erroneous.

Counsel for appellant vigorously contends that the trial
court erred in permitting witnesses to testify that appellant
agreed with the Hoxies that he would take $630 of the money
delivered to him for Mageras and pay off the first mortgage
on the property of Mageras. Counsel says that this evidence,
if it shows anything, "tends to show that the defendant
violated a legal duty which he owed to the Hoxies, that of
seeing that their money was used to pay on the first mortgage
then on the property so that they in turn would have a first
mortgage." Counsel further argues:

"If there ever was a case which would illustrate the fallacy of
the proposition that, because a man might commit one crime, he
must be guilty of another crime charged against him, it is the case
at bar. For instance, if we admit that Peterson agreed with the
Hoxies that he personally would see that the first mortgage was
paid off out of the money paid by the Hoxies, that is not the slight-
est evidence of an embezzlement of money belonging to Mageras.
If, as the defendant claims, he thereafter delivered this money to
Mageras, which, of course, would leave him innocent of the em-
bezzlement charged in the information, yet he was still guilty of a
breach of a legal duty owed to the Hoxies."

The transactions with the Hoxies—defendant's procurement of $1,200 from them—was certainly a proper part of the state's case; and what was to be done with the money was a part of the transaction and an attendant circumstance. It was not an attempt to prove the commission of another crime by defendant to show motive and intent. It devolved upon the state to prove that Peterson obtained $1,200 and the purpose for which it was obtained. The evidence of his agreement to use $630 with which to pay the prior mortgage on the Mageras property tended to establish the proposition that the money belonged to Mageras. The testimony was both competent and relevant. The rule relative to the admission of evidence to show other crimes than the one charged has no application whatever to this evidence. For that reason the trial court did not err in refusing to instruct the jury as requested by appellant, to the effect that evidence of a breach of trust or other duty toward Mr. and Mrs. Hoxie should not be considered by the jury.

Finding no substantial error in the record the judgment is affirmed.

CORFMAN, C. J., and GIDEON, THURMAN, and FITCH, JJ., concur.